F. G. BISHOFF, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 3993.    Promulgated March 22, 1927.

1. The imposition of a fraud or negligence penalty is not justified.

2. Where the evidence fails to show the petitioner's true net income, or the fact that he had a loss, or that the determination of the Commissioner can not be correct, it is insufficient to show that the method used by the Commissioner in determining the deficiency under section 212 (b) of the Revenue Act of 1918 is faulty and less likely to reach a correct result than could be reached from the records of the petitioner.

*J. Robert Sherrod, Esq.,* and *Ward Loveless, Esq.,* for the petitioner.

*J. E. Marshall, Esq.,* for the respondent.

The taxes in controversy are income taxes for the calendar years 1918 and 1919. The Commissioner determined a deficiency of $2,294.33 for the year 1918 and a deficiency of $2,064.54 for the year 1919, or a total deficiency of $4,358.87, all of which is in controversy. The returns filed by the petitioner for the two years in question

showed losses from the business conducted by him.  The Commissioner, contending that the petitioner's books did not clearly reflect income, computed the income from the petitioner's business for each year, taking as such income a percentage of gross sales by the use of an average-percentage table.  At a hearing the Commissioner was allowed to amend his answer to allege that the petitioner was guilty either of fraud or of negligence in filing his returns for these two years and to request the imposition of the proper penalty.  He was also granted permission to amend his answer to allege that for 1918 the petitioner failed to report $15,096.23, received as income from sales and trucking, and that for 1919 " the taxpayer considered $5,092.81 as a deduction for automobile repairs, and thereby reduced auto expenses and repairs on his return by that amount to $5,197.12."

## FINDINGS OF FACT.

The petitioner is an individual residing at Braddock, Pa.  During the years in question he was there engaged in business as a retail grocer and also did some motor truck hauling and sold some gasoline.

He had been in the grocery business since 1886, in the trucking business since 1917, and in the gasoline business since the first part of 1918, when he sold some gas at his garage.  It was not until March, 1918, that he had a part of a " drive-in " station at his store in operation.

During the taxable years his grocery business was largely " credit and delivery " rather than " cash and carry."  Several " cash and carry " chain stores were located near his place of business and were in competition with his store.

As Braddock had become more and more an industrial town, many of the better class of his customers had moved to the outlying districts.  He maintained a corps of solicitors who visited those nearby communities twice weekly, taking orders for groceries.

In 1918 there was a so-called " Federal Price Dictator " in the vicinity who set " fair prices " on standard commodities and published the list daily.  This affected the petitioner's business.  Wages of employees were also higher than usual in 1918 and 1919, and it was not possible to get as good employees as at other times.

The petitioner's bookkeeper had been in his employ for many years.  She had never taken any course in bookkeeping.  Two other employees, cashiers, compiled daily sheets showing cash sales and credit sales.  Weekly sheets of the same were made from these and at the end of the month the bookkeeper made appropriate entries on the books.

Customers' accounts were kept in a register which provided a separate little book for each account, from which, as a sale was made, a

duplicate slip was furnished to the purchaser and the original was filed by the store. The total was carried forward on each slip and showed the amount receivable. These slips were audited monthly and then filed in the cellar of the store.

The accounts of the store consisted of a daily tabulation of sales as above described, the stubs of checks issued, and an estimate of the cash expenditures. On March 5, 1918, a Baker-Vawter Combined Cash and Daily Statement book was opened, but was later discarded and was not used in making out the income-tax return for either year here involved. As kept by the petitioner's bookkeeper it did not clearly reflect income. The daily sales sheets were used to make out the income-tax returns.

Purchases by petitioner of bread, cakes, pies, local produce and poultry and express and freight charges were paid in cash from the cash drawer. All invoices, bills and receipts for 1918 are now missing, as are the original register slips of sales. Check stubs for the period January 1 to 18, 1918, are also missing.

During 1919 a ledger was kept containing a record of the expenditures, total monthly salaries paid, and automobile expenses. The bookkeeper did not know how much salary was paid to each employee.

The petitioner had only one bank account. From it he loaned money to other concerns in which he was interested, paid some of his personal expenses, and in addition paid some of the expenses of his business. The bookkeeper in 1925, relying upon her memory for the information, made pencil notations on some of the check stubs. The following are examples of her notations: "Mdse," "Personal," "Interest," "Loan," "Repairs," "Auto parts," "Auto expense."

The following are typical examples of the checks, stubs and notations:

| | | | | |
|---|---|---|---|---|
| No. 19,405<br>Dec. 26, 1918<br>W. M. Strathern          161. 61<br>Mdse          111. 51<br>Auto exp          19. 25   }[Pencil]<br>Real estate<br>  Exp          30. 85 | | F. G. BISHOFF & CO.          No. 19405<br>    Braddock, Pa. Dec. 26, 1918<br><br>Pay to the Order of W. M. Strathern      $161. 61<br>One hundred Sixty One and 61/100 Dollars<br><br>To BRADDOCK TRUST COMPANY<br>    Braddock, Pa.<br>              (signed)   F. G. Bishoff & Co. | | |
| No. 19,430<br>Dec. 28, 1918<br>G. H. Samuels          155. 25<br>Dec. 20          51. 75<br> "    18          51. 75<br> "    14          51. 75<br><br>Mdse    [Pencil] | | F. G. BISHOFF & CO.          No. 19430<br>    Braddock, Pa. Dec. 28, 1918<br><br>Pay to the Order of G. H. Samuels      $155. 25<br>One Hundred Fifty-Five Dollars Twenty Five<br>    Cents<br><br>To BRADDOCK TRUST COMPANY<br>    Braddock, Pa.<br>              (signed)   F. G. Bishoff & Co. | | |

| | |
|---|---|
| No. 19,451<br>Jan. 3, 1919<br>Pgh Produce Co.          703. 09<br>Sept. 2-21     257. 30<br>Oct.   30     445. 79<br><br>Listm Acct.<br>1918 Mdse   [Pencil] | F. G. BISHOFF & CO.                     No. 19451<br>    Braddock, Pa. Jan. 3, 1919<br><br>Pay to the Order of Pgh Produce Co.     $703. 09<br>Seven Hundred Three Dollars Nine Cents<br><br>To BRADDOCK TRUST COMPANY,<br>    Braddock, Pa.<br>                    (signed)   F. G. Bishoff & Co. |
| No. 19,450<br>Jan. 3, 1919<br>First Nat Bank of<br>    Russellton, Pa.   2, 540. 83<br>Note        2, 500. 00<br>For Int. to<br>    Dec. 31   38. 33<br>    Int. to Jan<br>      6, 19     2. 50<br><br>1919   [Pencil] | F. G. BISHOFF & CO.                     No. 19450<br>    Braddock, Pa. Jan. 3, 1919<br><br>Pay to the Order of First Nat Bank<br>    of Russellton              $2, 540. 83/100<br>Two Thousand Five hundred Forty and 83/100<br>    Dollars<br><br>To BRADDOCK TRUST COMPANY<br>    Braddock, Pa.<br>                    (signed)   F. G. Bishoff & Co. |
| No. 19469<br>Jan. 9, 1919<br>Rankin Water Co.<br>    13/1-31            190<br>18 Water Rent   [Pencil] | F. G. BISHOFF & CO.                     No. 19469<br>    Braddock, Pa. Jan. 9, 1919<br><br>Pay to the Order of Rankin Water Co.     $1. 90<br>One Dollar Ninety Cents<br><br>To BRADDOCK TRUST COMPANY<br>    Braddock, Pa.<br>                    (signed)   F. G. Bishoff & Co. |
| No. 19534<br>Jan. 23, 1919<br>M. Given              1, 463. 12<br>Dec. 19      127. 81<br>"   17      826. 73<br>    19      492. 75<br>    28      158. 4<br><br>Mdse   18   [Pencil] | F. G. BISHOFF & CO.                     No. 19534<br>    Braddock, Pa. Jan. 20, 1919<br><br>Pay to the Order of M. Given<br>Fourteen Hundred Sixty Three Dollars Twelve<br>    Cents<br><br>To BRADDOCK TRUST COMPANY<br>    Braddock, Pa.<br>                    (signed)   F. G. Bishoff & Co. |

The books carried no cost of buildings, equipment, or automobiles used in the business. The store building was of brick, 80 by 80 feet, three stories high, with glazed brick front, white tile trim, composition roof, and had four storerooms downstairs and apartments upstairs. It was completed in 1909 at a cost of $49,856.20. This did not include the cost of furnishings and equipment. The petitioner had purchased and was using the following:

| Item. | Cost. |
|---|---|
| 1 Cash register | $960. 00 |
| 7 Scales | 1000. 00 |
| 1 Box | 1500. 00 |
| Other butcher's equipment | 2500. 00 |
| 1 Electric slicer | 250. 00 |
| 1 Coffee mill | 150. 00 |
| 1 McCaskey register | 500. 00 |

During the taxable years the petitioner used automobiles for delivering, hauling, and soliciting in connection with his business. He maintained his own garage where some of his own repair work was done. He had several garage employees. The streets were bad in the vicinity of Braddock. Checks and stubs are the only record of the amount paid for repairs to automobiles and trucks.

In 1918 he was using a number of trucks and automobiles. Some of these were traded in 1918 and 1919 as part payment for new ones.

He purchased a 5½-ton Mack truck in 1917 for $4,800. In 1919 he traded three Ford cars for three new ones and paid about $600 in addition, gave an old car and $3,500 for a new Rowe, gave nine or ten old cars and $6,400 for eight new Reos, and also bought two Autocars at $2,200 each, one 2½-ton Mack truck at $2,600, and one 4-ton Mack truck at $4,000.

During 1918, he employed about 37 people regularly and about 7 extra on Saturdays and holidays. He paid all employees in cash and kept no record of the amount paid. On the 1918 return $29,600 was deducted as wages. This amount was arrived at by multiplying the December payments by twelve.

In 1919 he employed the following number of people:

| During— | Number. | During— | Number. |
|---|---|---|---|
| January | 34 | July | 33 |
| February | 35 | August | 34 |
| March | 35 | September | 33 |
| April | 31 | October | 33 |
| May | 34 | November | 30 |
| June | 33 | December | 31 |

At the end of each month in 1919, the petitioner told his bookkeeper the total amount which he had paid in wages during that month. He also paid bonuses during the year and at the end of the year estimated the amount of them for the purpose of his income-tax return.

The petitioner looked over his stock of groceries and estimated its value in a lump sum. This constituted his inventory. He tried to keep the same amount of stock on hand at all times. The increase of $5,000 in the estimated inventories during 1918 was made because of an estimated increase in *cost*, rather than in *amount* of goods.

The total amount of wages paid for 1919 was computed to be $40,095, but was entered on the return as $38,595 because petitioner received $1,500 from the B. B. Stroud Co. of which he was president. The petitioner's bookkeeper kept the books of the B. B. Stroud Co. at petitioner's office and received $15 a week extra from the petitioner for this work.

The petitioner refunded to a hospital 10 per cent of the amount of his monthly sales to that hospital. These repayments amounted to $2,285.45 in 1918 and to $1,260.98 in 1919.

The petitioner made from 2 to 3 cents gross profit per gallon on sales of gasoline. In 1918 and 1919 gasoline sold for from 32 to 35 cents per gallon.

During 1918 the total gross sales from grocery, gasoline, and trucking businesses amounted to at least $326,665.99, instead of $311,-569.06 as reported.

For the purpose of making the original income-tax returns for the years in question, the petitioner's bookkeeper prepared figures from the records and submitted them to a representative of a local trust company who " worked up the figures " and one or the other of these two people wrote the figures on the return. The petitioner then signed it. The bookkeeper had no financial interest in the business. The representative of the trust company gave his services. The original return for the calendar year 1918 was signed and sworn to by the petitioner on March 15, 1919. The original return for the calendar year 1919 was signed and sworn to by the petitioner on March 10, 1920. Amended returns for the years 1918 and 1919 were signed and sworn to by the petitioner on January 22, 1924. In each instance the returns were promptly filed with the collector of internal revenue.

The original return for 1918 showed the following:

A. Income from Business as Retail Grocer.

| | | |
|---|---:|---:|
| Total sales and income from business | | $311,569.26 |
| Cost of Goods Sold: | | |
|     Merchandise | $263,085.36 | |
|     Inventory at beginning of year | 20,000.00 | |
|         Total | $273,085.36 | |
|     Less inventory at end of year | 25,000.00 | |
|         Net Cost of Goods Sold | | 258,085.36 |
| Other business deductions: | | |
|     Salaries, wages, etc | $29,600.00 | |
|     Interest | 6,132.36 | |
|     Taxes on business and business property | 1,367.99 | |
|     Repairs, wear and tear, obsolescence, depletion, etc | 21,354.79 | |
|     Other expenses | 550.00 | |
| | | $317,090.50 |
|     Net Loss from business [Red] | | $5,521.44 |
| B. Income from Director's Fees | | $123.00 |
| D. Profit from Sale of Land | | $4,350.00 |
| E. Income from Rents | | $3,720.00 |
| H. Total Net Income from above sources | | $2,671.56 |
| I. Interest and Contributions not included above | | 2,324.90 |
| J. Total Net Income for Normal Tax | | $346.66 |
| K. Dividends | | 5,768.50 |
| L. Total Net Income subject to surtax | | $6,115.16 |
|     Calculation of Total tax, sur-tax only | | $12.30 |

Explanation of deductions claimed in Schedule A.—Brick business and apartment, acquired 1909—Cost of Property, or Market Value March 1, 1913, $42,000—Rate 2%—Amount charged off this year, $840.

Brick Garage and apartment—Cost of property, or Market Value March 1, 1913, $11,000—Rate 2%—Amount charged off this year, $220.

Repairs to Autos, $12,516.93.   Depreciation—Autos, $6,625.

The original return for 1919 showed the following:

A. Income from Business as Retail Grocer—Total sales and income
from business _____ $309, 860. 02

| | | |
|---|---|---|
| Cost of Goods Sold | $250, 710. 22 | |
| Other costs | 14, 679. 75 | |
| Inventory at beginning of year | 25, 000. 00 | |
| | $290, 389. 97 | |
| Inventory at end of year | 25, 000. 00 | |
| | | 265, 389. 97 |

Gross Income _____ $44, 470. 05

Other Business Deductions:

| | | |
|---|---|---|
| Salaries (and Wages) | $38, 595. 00 | |
| Interest | 3, 718. 07 | |
| Taxes on business and business property | 2, 117. 59 | |
| Repairs, wear and tear, obsolescence | 254. 21 | |
| Bad Debts | 3, 625. 05 | |
| | | 48, 309. 92 |

| | | |
|---|---|---|
| Net Loss from Business_____[Red]__ | | $3, 839. 87 |
| B. Income from Salaries and Director's Fees | | $5, 729. 00 |
| E. Income from Rents | | $2, 060. 00 |
| (Apartment over store and frame garage | $3, 120. 00 | |
| Less: Repairs, wear and tear, obsolescence, depletion and property losses | 1, 060. 00) | |

| | |
|---|---|
| H. Total net income from above sources | $3, 949. 13 |
| I. Interest and contributions | 1, 656. 00 |
| J. Total Net Income subject to Normal Tax | $2, 293. 13 |
| K. Dividends | 9, 645. 00 |
| L. Total Net Income subject to sur-tax | $11, 939. 13 |
| Computation of total tax | $199. 29 |

Explanation of Schedule A.—16. Depreciation (1919)

### Value

| | | | |
|---|---|---|---|
| Store fixtures & equipment | $13, 900. 00 | 10%__ | $1, 390. 00 |
| Autos & Trucks | $19, 354. 53 | 33⅓%__ | 6, 451. 51 |
| | | | $7, 841. 51 |

Schedule E. Depreciation.

| | | | |
|---|---|---|---|
| Brick Store & apartments | $45, 000. 00 | 2%__ | $900. 00 |
| Garage | 1, 800. 00 | 2%__ | 36. 00 |
| | | | $936. 00 |
| Repairs to buildings | | | 254. 21 |
| | | | $1, 190. 21 |

(A.7) Other Costs

| | |
|---|---:|
| Freight & Express | $1,064.53 |
| Light & Heat | 2,213.82 |
| Sundry Misc. Expenses | 3,710.42 |
| Water | 588.74 |
| Insurance | 151.31 |
| Truck Repairs Gasoline & Oil | 5,179.12 |
| Telephone | 563.96 |
| Licenses Mercantile & Trucks | 850.80 |
| Advertising | 357.05 |
| | $14,679.75 |

The method of accounting regularly employed in keeping the books of this petitioner does not clearly reflect the income. Two representatives of the Commissioner examined the books and accounts of the petitioner for the taxable years. One spent eight days, the other spent three days, in the examination. Each reported that he was unable to audit the accounts and determine the true income for the taxable years.

The Commissioner computed the profits from the petitioner's business for the taxable years by the use of an average percentage table, known as Serial No. 264. Serial No. 264 was compiled by the Statistical Section of the Income Tax Unit of the Bureau of Internal Revenue, from returns filed by corporations reporting themselves as in the grocery business for the year 1919.

The portion of this table used is as follows:

| Industrial divisions. | Ser. No. | Gross sales classes. | | | Gross income classes. | | |
|---|---|---|---|---|---|---|---|
| | | Under $10,000. | $10,000 $60,000. | $60,000 $150,000. | Under $10,000. | $10,000 $60,000. | $60,000 $150,000. |
| | | Per cent. | Per cent. | Per cent. | Per cent. | Per cent. | Per cent. |
| Groceries, fruit, meat, and produce, retail | 264 | | 22 | 18 | 37 | 18 | 12 |

In compiling Serial No. 264, there was no segregation of cash and carry stores from those which had credit and delivery systems; the return of no corporation showing gross sales in excess of $150,000, or showing losses, was considered; some of the returns had been audited, some had not. The instructions for the use of Serial No. 264 in the application of the formula to determine the proper net income based on gross sales for the year are as follows:

Amount of gross sales×Average percentage of profit from sales=Probable gross income.

Probable gross income×Average percentage of net income to gross income=Probable net income.

The Commissioner computed the petitioner's net income from the retail grocery, gasoline and trucking business to be $10,094.84 for the

year 1918 and $10,039.46 for the year 1919, and using these figures determined the deficiencies as above stated.

OPINION.

MURDOCK: This petitioner either failed to keep records which clearly reflect the income from his business, or else he failed to so place those records before us that from them we can compute that income. We do not know all of his credit items, nor do we know all of his debit items, and therefore we can not determine whether he had a gain or a loss, nor the amount of whichever he had. Certain links in the chain to measure his income are missing. They were capable of proof and having failed to prove them the petitioner can expect no relief from the deficiency as determined by the Commissioner.

We are asked to compute the expenditures made by this petitioner in his business during the taxable years by an examination of his checks and by an analysis of the testimony in regard to certain payments which he made in cash. From the testimony we are not satisfied of the amounts paid in cash for either year. Bills, invoices and receipts for 1918 are missing. The petitioner kept no accurate record of the amount he paid out in salaries. He contends that he paid wages to extra help and never deducted the amount in his income-tax return. He estimated the amount involved in this discrepancy.

All of his checks were put in evidence, but they were not self-explanatory even when read with the stubs. To remedy this the petitioner's bookkeeper, in 1925, made pencil notations on the stubs, as set out in the findings of fact. The stubs for part of 1918 are missing.

In placing the pencil notations on the stubs the bookkeeper relied upon her memory. She was not examined as to any of the checks, stubs, or items, but merely said in a general way that her notations were correct. This applies to both years. From evidence such as this we are unable to properly allocate and separate the different expenditures, some of which are deductible, some of which are not, some of which apparently belong to one year, some to another. An accountant's compilation from this same source is of no assistance to us.

Taking into consideration all of the evidence we are unable to say whether the petitioner made a profit or suffered a loss in either year. Nor can we say that the income from his business was not as great as that attributed to this source by the Commissioner. Counsel for the petitioner admitted that we can not now accurately compute and determine what was the correct income. Here the evidence

proves nothing from which we would be justified in taking any other figure to represent the true deficiency than that determined by the Commissioner.

We are not convinced that the petitioner was guilty of either fraud or negligence in filing his income-tax returns for the two years here in question, as those terms are used in the Revenue Act.

> *The deficiencies are: For 1918, $2,294.33; for 1919, $2,064.54. Order will be entered accordingly.*